USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/1/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CMC TRANSACTION SERVICES, LLC,

               *Plaintiff*,

-*against*-

IDEX CORPORATION,

               *Defendant.*
------------------------------------------------------------X

18 Civ. 4925 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff brings this action against Defendant for an unpaid commission Plaintiff claims it is owed for facilitating Defendant's acquisition of a company called thinXXS. The acquisition closed after the expiration of the consulting contract between the parties. Plaintiff asserts that it is nonetheless entitled to the commission because the parties orally agreed to extend the time period for consulting services. Defendant moves to dismiss on the basis that there was no oral modification; and if there were one, it would be barred by the New York Statute of Frauds. For the following reasons, the Court GRANTS Defendant's motion to dismiss.

## BACKGROUND[1]

Plaintiff, CMC Transaction Services, LLC ("CMC"), previously known as Johnston Blakely & Company, LLC, is a registered broker that provides strategic advisory services on mergers, acquisitions, and private placements for established and emerging companies in the life science industries. Dkt. 1 ("Compl.") ¶¶ 3, 10-11. Defendant IDEX Corporation ("IDEX") is a manufacturer of fluidics equipment and engineered products. *Id.* ¶ 13.

---

[1] The Court accepts as true all of Plaintiff's factual allegations and construes the complaint in the light most favorable to Plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

On March 19, 2015, CMC and IDEX entered into a written consulting contract (the "Consulting Agreement" or "Agreement"), which stipulated that IDEX would pay CMC for providing brokerage services in qualified acquisition transactions. *Id.* ¶ 2-4. "Qualified Transactions" were defined in the Agreement as deals closing during a six-month term ending on September 20, 2015 or within a 12-month "tail" period ending on September 20, 2016. Dkt. 18, Ex. B, "Agreement," § 4.[2] The Agreement provided that the terms "may not be modified or amended except in writing duly executed by the parties hereto" and that the Agreement shall terminate at the end of the 12-month tail period "unless extended in writing by both parties." Agreement §§ 5, 17. One of the target companies identified in the Agreement was thinXXS Microtechnology AG ("thinXXS") (pronounced "thinks"), a German microfluidics company. Compl. ¶ 21; Agreement App'x A.

During the 6-month term for services under the Agreement, CMC was in contact with thinXXS regarding its interest in being acquired by IDEX. Compl. ¶ 24. When CMC initially got in touch with thinXXS on IDEX's behalf in 2015, thinXXS stated that it was not ready to be acquired. *Id.* On or about August 3, 2016—less than two months before the end of the 12-month tail period—IDEX requested that CMC approach thinXXS again. *Id.* ¶ 25. CMC alleges that IDEX verbally assured CMC that CMC would still be paid if the deal closed after the tail period ended; IDEX denies ever extending the Agreement. *Id.* ¶ 26-27; Dkt. 17 at 4.

---

[2] Plaintiff did not attach the Agreement to the Complaint, but referenced it in the Complaint and later submitted it to the Court as Exhibit B to its Opposition to Defendant's Motion to Dismiss. (*See* Dkt. 18-2.) The Court finds that it is appropriate to consider the Agreement in deciding on the motion to dismiss, since the Agreement was incorporated in the Complaint by reference. *See Fraser v. Fiduciary Tr. Co. Int'l*, 417 F.Supp.2d 310, 317 (S.D.N.Y. 2006) ("When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the Complaint as exhibits or incorporated in it by reference.").

2

CMC set up a meeting between IDEX and thinXXS, which occurred on September 22, 2016—two days after the 12-month tail period ended. Compl. ¶¶ 29-30; Dkt. 20, "Robinson Dec. in Opp.," Ex. 1 at 1-3; Agreement § 4. On October 20, 2016, IDEX asked CMC to follow-up with thinXXS, and CMC did so. Compl. ¶ 31.

On January 11, 2017, IDEX asked CMC to again approach thinXXS, and to reach out to another target company. *Id.* ¶ 33. According to Plaintiffs, CMC again raised the issue of the tail period having expired on the Agreement and stated its understanding that CMC would receive its fee in the event of a deal closing, and IDEX again reassured CMC that it "will get paid." *Id.* ¶ 34. None of this was in writing and IDEX denies any such assurance. Dkt. 16 at 4. Plaintiff claims it reached out to thinXXS once again. *Id.* ¶ 37.

In December 2017, more than a year after the tail period expired, CMC received an email from IDEX, forwarding an IDEX announcement that it had completed the acquisition of thinXXS. *Id.* ¶ 38. In response, CMC asked to confirm that CMC was under contract for thinXXS and stated that it would calculate the fee owed to CMC based on the deal terms. *Id.* ¶ 39.

CMC demanded payment pursuant to the Consulting Agreement, but IDEX refused to make any payment to CMC, even though it had acquired thinXXS. *Id.* ¶ 41.

On June 4, 2018, CMC filed the Complaint. Dkt. 17 at 4.

## DISCUSSION

### I. Motion to Dismiss Standard

To defeat a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting* 550 U.S. at 555). The court must construe the factual allegations contained in the complaint as true and view the complaint in the light most favorable to plaintiffs. *Twombly*, 550 U.S. at 555.

At the motion to dismiss stage, the court "assess[es] the legal feasibility of the complaint," but does not "assay the weight of the evidence which might be offered in support thereof." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).

## II.  Breach of Contract

Under New York law, "an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). The New York Statute of Frauds provides that "a contract to pay compensation for services rendered in negotiating the purchase . . . of a business," including broker agreements, is void unless in writing. N.Y. Gen. Oblig. Law § 5-701(a)(10). *See also Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV*, 754 F. Supp. 2d 610, 615 n.3 (S.D.N.Y. 2010) (N.Y. Gen. Oblig. Law § 5-701(a)(10) applies where a broker seeks commission for introducing potential buyers, arranging meetings, and participating in business negotiations). In addition, N.Y. Gen. Oblig. Law § 15-301(1) provides that "a written agreement that expressly states that it can only be modified in writing cannot be modified orally." *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir. 1990).

Partial performance of an oral modification, however, can circumvent the § 15-301(1) statutory bar on oral modifications to agreements with no-oral-modifications clauses. *See* N.Y. Gen. Oblig. Law § 5-703(4); *Rose v. Spa Realty*, 366 N.E.2d 1279, 1283 (N.Y. 1977) (awarding plaintiff purchasers specific performance of an oral agreement reducing the quantity of land to be conveyed in a written agreement of sale based on partial performance of the oral modification— *i.e.* seller's application for approvals on the reduced number of lots). In order to establish the existence of an alleged oral modification under the *Rose* partial performance doctrine, however, a plaintiff's conduct must be unequivocally referable to the oral modification or not otherwise compatible with the agreement as written. *Towers Charter*, 894 F.2d at 522.

Plaintiff's breach of contract claim is based on an alleged oral modification of the Consulting Agreement. The claim, which is for the purchase of a business, is subject to the Statute of Frauds and is void because it was not made in writing. N.Y. Gen. Oblig. Law § 5-701(a)(10). The Agreement's no oral modification clause provides further support that Plaintiff's claim is precluded by the Statute of Frauds. *See* N.Y. Gen. Oblig. Law § 15-301(1); *Towers Charter*, 894 F.2d at 522.

The *Rose* partial performance doctrine does not save Plaintiff's claims, because it does not apply to agreements for broker or finder fees. *See Duckett v. Engelhard*, No. 15-cv-8645 (RJS), 2017 U.S. Dist. LEXIS 16961 at *7 (S.D.N.Y. Feb. 6, 2017) (noting that the New York Court of Appeals has "firmly stated" that there is no partial performance exception to Section 5-701(a)(10) of New York's Statute of Frauds); *Castellotti v. Free*, 27 N.Y.S.3d 507, 513 (1st Dep't 2016) ("the partial performance exception applies only to the statute of frauds provision in [N.Y. General Obligations Law § 5-703, ["Conveyances and contracts concerning real property required to be in writing"] and has not been extended to § 5-701").

Plaintiff's conduct also was not unequivocally referable to an alleged oral contract. *See Anostario v. Vicinanzo*, 450 N.E.2d 215, 216 (N.Y. 1983) (for conduct to be "unequivocally referable," it must be "explainable only with reference to the oral agreement"); *see also Microbanc, LLC v. InspireMD, Inc.*, No. 16 CV 3860-LTS, 2018 U.S. Dist. LEXIS 9832 at *11 (S.D.N.Y. Jan. 22, 2018) (Plaintiff's conduct (*i.e.* continuing to act as a broker after the expiration of the consulting agreement) was not unequivocally referable to an alleged oral modification extending the agreement because it could be "reasonably explained by the possibility of other expectations"). In the instant case, the Court can reasonably explain Plaintiff's conduct as "preparatory steps" taken towards consummation of a new agreement. *Id.* Moreover, the parties had not set new price terms or an expiration to the allegedly modified agreement modification, suggesting that the term of the original agreement had not been extended. *See Morris Cohon & Co. v. Russell*, 245 N.E.2d 712, 715 (N.Y. 1969) (referring to "the well-established rule that in a contract action a memorandum sufficient to meet the requirements of the Statute of Frauds must contain expressly or by reasonable implication all the material terms of the agreement, including the rate of compensation if there has been agreement on that matter").[3]

### III. Quantum Meruit

To recover in quantum meruit, "a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an

---

[3] CMC also did not admit to an oral modification to the Agreement. On the contrary, CMC's behavior is more consistent with an understanding that the terms of the agreement had expired. When CMC learned that the thinXXS acquisition had closed, CMC emailed IDEX and stated that it was "very strange" that no one had notified CMC that they were under contract on the thinXXS negotiation, but IDEX did not respond. Robinson Dec. in Opp. Ex. 3 at 1. CMC emailed twice more asking for information about the fee arrangement, and again IDEX did not respond. Robinson Dec. in Opp. Ex. 4 at 1. IDEX's non-response is not an admission of an oral modification to the Agreement.

6

expectation of compensation therefor, and (4) the reasonable value of the services." *Learning Annex Holdings, LLC v. Rich Global, LLC*, 860 F. Supp. 2d 237, 242 (S.D.N.Y. 2012). New York law does not permit recovery in quantum meruit if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

N.Y. Gen. Oblig. Law § 5-701(a)(10) precludes CMC, a broker, from availing of quantum meruit to recover services fees based on an alleged oral agreement. *See Minichiello v. Royal Business Funds Corp.*, 223 N.E.2d 793 (N.Y. 1966) (holding that the legislature intended to preclude recovery in quantum meruit for brokers and finders); *Snyder v. Bronfman*, 921 N.E.2d 567 (N.Y. 2009) (holding that § 5-701(a)(10) makes clear that the Statute of Frauds applies to quantum meruit claims); *see also Ellis v. Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399, 412 (S.D.N.Y. 1998) (plaintiff could not utilize a quasi-contract theory such as unjust enrichment to circumvent the § 5-701 Statute of Frauds).

## IV. Equitable and Promissory Estoppel

In New York, "promissory estoppel has three elements: [i] a clear and unambiguous promise; [ii] a reasonable and foreseeable reliance by the party to whom the promise is made[;] and [iii] an injury sustained by the party asserting the estoppel by reason of the reliance." *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (internal citation and quotation marks omitted). To circumvent the "statutory bar" on enforcement of unwritten agreements that fall under the Statute of Frauds, equitable and promissory estoppel claims require an injury so egregious that it would be unconscionable to allow a defendant to invoke the Statute of Frauds. *See American Bartenders School v 105 Madison Co.*, 457 N.Y.S.2d 523 (1st Dep't), *aff'd* 450 N.E.2d 230.

An "unconscionable injury" is "injury beyond that which flows naturally . . . from the non-performance of the unenforceable agreement." *Merex A.G. v. Fairchild*, 29 F.3d 821, 826 (2d Cir. 1994). For an injury to overcome the Statute of Frauds, "a plaintiff must suffer a greater injury than one that is both predictable and, to a certain degree, the consequence of the [p]laintiff's own choices." *Robins v. Zwirner*, 713 F. Supp. 2d 367, 377 (S.D.N.Y. 2010).

Promissory estoppel is not available because Plaintiff fails to allege an unconscionable injury. *See Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 341 (S.D.N.Y. 2008) "[I]n the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone business opportunities or damage to business reputation." *Id.*; *see also Ellis*, 3 F. Supp. 2d at 410-11 (noting it is well established under New York law that lost fees are not "unconscionable injuries" for purposes of circumventing the Statute of Frauds); *Philo Smith & Co. v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir. 1977) (affirming district court's dismissal of promissory estoppel claim barred by the Statute of Frauds because plaintiff's injury, the loss of a finder fee commission, was "solely a result of the non-performance of a void agreement" and "not the kind of injury contemplated by New York law" as falling within the unconscionability exception).

It is proper to dismiss the cause of action due to lack of an unconscionable injury on the pleadings alone. *See Komlossy v. Faruqi & Faruqi, LLP*, 15 Civ. 9316 (KPF), 2017 U.S. Dist. LEXIS 25490 (S.D.N.Y. Feb. 23, 2017) (granting defendant's motion to dismiss in suit for unpaid finder fee commission under alleged oral finder fee agreement because alleged injury did not demonstrate an unconscionable injury).[4]

---

[4] Plaintiff's argument that it should have the benefit of discovery before dismissal is without merit. *See Microbanc*, 2018 U.S. Dist. LEXIS 9832 (dismissal of quantum meruit claim to recover Plaintiff's finder fee based on oral

8

## **CONCLUSION**

Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate Dkt. 16 and close this case.

Dated: New York, New York
August 1, 2019

SO ORDERED

*Paul A. Crotty*

PAUL A. CROTTY
United States District Judge

---

assurances). The pleadings are deficient because they contain no evidence of a writing to support modification of the Agreement, and the Court need not approve of Plaintiff's fishing expedition to discover a basis for its claims.